MICHIGAN STATE UNIVERSITY EMPLOYEES ASSOCIATION v
MICHIGAN STATE UNIVERSITY

1. LABOR RELATIONS—COLLECTIVE BARGAINING REPRESENTATIVE—
   ELECTIONS—VOTER QUALIFICATIONS—CHALLENGES—WITH-
   DRAWAL.

   For practical purposes in an election to select a collective bar-
   gaining representative, the voting eligibility of a particular
   employee is conceded by any party to the election, whether
   employer or prospective bargaining representative, who makes
   no challenge; where the only party challenging a voter's eligi-
   bility withdraws that challenge he is exercising the choice he
   originally had of conceding voting eligibility and abandoning
   his right to litigate the questioned status, a right which the
   challenging party alone has invoked and which would appear
   to be peculiarly the right of the challenging party, absent
   unusual circumstances.

2. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—DISCRE-
   TION—COLLECTIVE BARGAINING REPRESENTATIVE—ELECTIONS—
   VOTER QUALIFICATIONS—CHALLENGES—WITHDRAWAL.

   It is within the discretion of the Employment Relations Commis-
   sion to allow a party to an election selecting a collective
   bargaining representative to allow a party who properly chal-
   lenges the voter eligibility of certain voters to withdraw the
   challenges after the election over the objection of another party
   to the election; since to require a party's affirmative assent to
   withdrawal of the challenge of another party is scarcely differ-
   ent from allowing a postelection challenge contrary to the
   commission's rules and since there is no reason why a chal-
   lenger need rely on the challenge of another party and the
   requirement that he make an independent challenge imposes
   no hardship, nothing useful is to be accomplished by a contrary
   holding, and there would be only a potential for delay and
   burdensome administrative litigation.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 48 Am Jur 2d, Labor and Labor Relations §§ 512, 531–538.

Appeal from Michigan Employment Relations Commission. Submitted Division 2 November 16, 1973, at Lansing. (Docket No. 17006.) Decided December 6, 1973.

The Michigan State University Employees Association filed a petition for a consent election with the Michigan Employment Relations Commission to determine a recognized bargaining representative of certain designated employees at Michigan State University. Council No. 7, American Federation of State, County and Municipal Employees, AFL-CIO, intervened. Michigan State University challenged the eligibility of certain employees to vote. After the election Michigan State University moved to withdraw the challenges. Motion granted. Council No. 7, American Federation of State, County and Municipal Employees, AFL-CIO, appeals. Affirmed.

*Foster, Lindemer, Swift & Collins, P. C.* (by *James A. White),* for plaintiff Michigan State University Employees Association.

*Anderson, Carr, Street & Hornbach,* for defendant Michigan State University.

*Zwerdling, Maurer, Diggs & Papp,* for intervening defendant Council No. 7, American Federation of State, County and Municipal Employees, AFL-CIO.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for the Michigan Employment Relations Commission.

Before: QUINN, P. J., and HOLBROOK and PETER-SON,* JJ.

PETERSON, J. Pursuant to an agreement for consent election, the Michigan Employment Relations Commission held a representation election to determine a recognized bargaining representative of certain designated employees of Michigan State University. Prior to the election, the employer submitted to the commission a list of names and addresses of eligible voters pursuant to MERC Rule 45. The election failed to provide a majority for either the plaintiff, hereinafter called MSUEA, or intervening defendant, hereinafter called AFSCME, and a run-off election was scheduled for November 13–14, 1972. Although there had been considerable controversy, including litigation, preceding the election, *no party filed objections to the election.*

On November 13, 1972, the employer produced a revised list of employees eligible to vote and challenged each employee from the original list who appeared to vote and whose name was not on the revised list.[1] AFSCME challenged some of the same employees. In all, 179 employees were challenged by the three parties.

MERC Rule 46(2) authorizes challenge to the eligibility of the employee "prior to the time the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Much is made of this shortened list as not complying with the seven day requirement of Rule 45. The remedy, if any, lies in a protest of the election. And unlike the situation where a party is suddenly confronted with an expanded list, it is hard to see how AFSCME could be damaged thereby in exercising its challenges. The normal rule is that the burden of reviewing such lists and challenging is on the parties and not on the regulatory agency, *sua sponte. Calcor Corp,* 106 NLRB 539; 32 LRRM 1498 (1953); *NLRB v Paper Art Co Inc,* 430 F2d 82 (CA 7, 1970). Here there was ample time to investigate the original list and to determine whether any, including those omitted by the later list, were in fact ineligible and subject to challenge.

voter casts his ballot", and in accordance with that rule, the challenged ballots were marked and set aside, Rule 46 also provides:

"If it is determined by the board or its election agent that the challenged ballot, or ballots, is decisive of the result, the board shall determine the merits of any challenged ballot and decide whether or not the person is an eligible voter."

A tally of the unchallenged ballots disclosed 634 votes for AFSCME and 617 for MSUEA. The 179 challenged ballots would thus be decisive of the result. Before scheduling a hearing under Rule 46 to determine the merits of the challenges, the commission scheduled a conference for December 12, 1972, to determine whether the matter might be resolved by informal means. At that meeting, the employer withdrew 87 of its challenges. Of this number, three had also been challenged by AFSCME which declined to withdraw its challenges and contended that the employer should not be permitted to withdraw its challenges.[2] The commission permitted the withdrawal of the employer's challenges, and counted the 84 ballots thus allowed. One was spoiled, 54 were cast for plaintiff and 29 for intervening defendant. MSUEA now had the majority of the ballots counted, 671 to 663, with 95 challenged ballots remaining.

A hearing on the merits of the challenges was scheduled for January 22, 1973. On December 27, 1972, however, the employer advised the commission that it would withdraw all of its challenges. The commission solicited comment from the interested parties, then determined that the question of

[2] AFSCME was actually agreeable to withdrawal of part of the challenges. As to the remainder, its position was that a challenging party could not withdraw its challenge over the objection of the other parties.

challenge withdrawal should be formally heard and that the scheduled January 22nd hearing would be limited to the sole issue of whether the employer's request to withdraw the challenges should be granted. Notice was given, the hearing was held, and the commission order followed finding that the employer was entitled to withdraw its challenges. AFSCME appeals on leave granted. It contends that once the right to challenge for eligibility is exercised, the commission must determine the merits of the challenged ballots if they are decisive to the election unless all parties agree to withdrawal of the challenges. It is further argued that to permit unilateral withdrawal of challenged ballots is an abuse of discretion and violative of the commission's statutory mandate since its effect is to permit an employer by such withdrawal to confer representation voting privileges upon specifically excluded employees.

As to the latter, suffice it to say that for the practical purposes of an election, the voting eligibility of a particular employee is conceded by any party to the election, whether employer or prospective bargaining representative, who makes no challenge. AFSCME made such concessions by its failure to challenge. When the only party challenging withdraws that challenge, it is, at the least, exercising the choice it originally had of conceding voting eligibility. But something more is involved: the abandonment of a right to litigate questioned status, a right which the challenging party alone has invoked and which would thence appear to be peculiarly the right of the challenging party, absent unusual circumstances. Neither by that abandonment of right nor by an initial failure to challenge, can any party to the representation election be held to have affirmatively con-

ferred upon anyone a right to vote. And while it may appeal to the emotion to state the issue here as one of the employer conferring voting rights on ineligible employees, the right to challenge or not, and to withdraw a challenge, is not peculiarly that of the employer, but is identical for any of the parties.

Does a right to withdraw a challenge exist? This is apparently a case of first impression. While challenges to eligibility are provided by rule, there is no authorization for their withdrawal. Yet nowhere has it been held that a challenge, once made, can only be pursued and adjudicated. To the contrary, both parties note a practice existing in Michigan and elsewhere, which is not merely tolerated but encouraged, of allowing challenges to be withdrawn in the interest of resolving labor elections economically, expeditiously, and with finality. It was in the course of such practice that the commission-sponsored conference of December 12, 1972, was scheduled.

Nor are we cited to any opinion, judicial or administrative, as to whether a challenge by one interested party to the election can only be withdrawn by the consent of all parties. We see nothing useful to be accomplished by such a holding, only the potential for delay and burdensome administrative litigation. There is, after all, no reason why a challenger need rely on the challenge of another party, and a requirement that he make his independent challenge imposes no hardship. To require a party's affirmative assent to withdrawal of the challenge of another party is scarcely different than allowing a postelection challenge contrary to Rule 46(2) which requires challenge before the ballot has been cast.[3] To that analogous point,

[3] And counsel for AFSCME claimed in oral argument that it should have the right to postelection challenge.

both parties have cited *NLRB v A J Tower Co,* 329
US 324; 67 S Ct 324; 91 L Ed 322 (1946), where the
Court held that a refusal to entertain postelection
challenges was not an abuse of discretion by the
National Labor Relations Board, saying:

"The fact that cutting off the right to challenge
conceivably may result in the counting of some ineligi-
ble votes is thought to be far outweighed by the dangers
attendant upon the allowance of indiscriminate chal-
lenges after the election. * * *

"We are unable to say, therefore, that the Board's
prohibition of postelection challenges is without justifi-
cation in law or in reason. It gives a desirable and
necessary finality to elections, yet affords all interested
parties a reasonable period in which to challenge the
eligibility of any voter." Pages 331, 332–3.

The Michigan Employment Relations Commis-
sion has similarly exercised its discretion in Rule
46(2), requiring challenges to be made prior to the
casting of the ballot. We think the commission's
general practice of allowing the withdrawal of
challenges, although not formalized by rule, and
its specific ruling here that such withdrawal may
be made over the objection of another party to the
election, are equally within the rationale of *A J
Tower,* and within the discretion of the commis-
sion.

That is not to say that in an appropriate case,
the commission might not be presented with facts
by a party objecting to proposed withdrawal of a
challenge which would warrant the commission in
refusing the right of withdrawal, or in the face of
which it might be an abuse of discretion to permit
the challenge to be withdrawn. We see no such
abuse of discretion here.

Affirmed.

All concurred.